IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| STEPHANIE CHAPMAN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:20cv00105 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| WAL-MART, INC. ) | |
| ) | By: Hon. Thomas T. Cullen |
| Defendants. ) | United States District Judge |
| ) | |

Plaintiff Stephanie Chapman brought this case under Title VII, alleging that defendant Walmart, Inc. ("Walmart") discriminated against her on the basis of sex. Chapman alleges that she was paid less than her comparable male coworkers. The case is now before the court on Walmart's motion for summary judgment on Chapman's claim of pay discrimination. Because Chapman has not stated a *prima facie* case of gender discrimination, the court will grant summary judgment to Walmart on all claims.

### I.   BACKGROUND

**A.   Relevant Walmart Policies**

According to the declaration of Lisa Riley, Vice President of Global Total Rewards at Walmart, the following is an overview of Walmart's relevant compensation practices. (*See* Decl. of Lisa Riley ¶ 4, Jan. 26, 2021 [ECF No. 4-1].)

Each Walmart store has its own pay structure, which is reviewed annually to ensure that it remains competitive in each store's respective labor market. (*Id.* ¶¶ 9–10.) In that pay structure, every associate's position is assigned to a particular "pay class" or "position pay

grade" based on the job responsibilities, and jobs in the same pay class have the same minimum starting wage. (*Id.* ¶¶ 11–12.) While an associate must be paid at least that minimum wage, assistant store managers ("ASMs"), who typically set an associate's starting wage, can increase an associate's wage based on additional skills, experience, or education. (*Id.* ¶¶ 13–14.)

After an associate starts, there are further opportunities for pay increases: (1) after a 90-day evaluation; (2) after annual performance evaluations, which are generally completed by the assistant store manager or co-manager responsible for overseeing the associate's department and co-signed by the associate's hourly supervisor[1]; (3) if an associate receives a "merit increase" for "exceptional performance" or accepting additional responsibilities (*e.g.*, joining a Safety Team); (4) if the associate is promoted or moved into a higher pay class; and (5) if a facility's pay structure is modified to stay competitive in a market. (*Id.* ¶¶ 15–16, 18–20.) The result is that "it is not uncommon for associates in the same position at a given time to have differing rates of pay." (*Id.* ¶ 22.) Additionally, "associates in the same pay class whose employment history at Walmart includes working at different stores may have different rates due to variances between the local facility rates, market conditions, and decision-makers at the various stores where they have worked over the course of their careers." (*Id.*)

**B.     Chapman's Walmart Employment History**

Chapman has worked for Walmart in several capacities and locations over the years. She began on May 22, 1991, as a Department Manager in the Lawn & Garden and Pets

---

[1] The amount of the pay increase corresponds to the performance rating that an employee receives, as set forth in Walmart's Compensation Guidelines. (*See* Riley Decl. ¶ 17.) Until June 2004, pay increases were set in percentages, but beginning in June 2004, they were set in dollar amounts. (*Id.*)

department at a store in Martinsburg, WV. (*Id.* ¶ 24.) Prior to her employment with Walmart, Chapman sold mobile homes, temporarily worked for Domino's Pizza, worked as a seasonal employee at Hickory Farms, worked in accounts payable for a county court, and worked as a sales associate for Southland Corporation. (*Id.* ¶ 23.)

On September 20, 1997, Chapman transferred to the Walmart location in Charles Town, WV, as a Lead Associate in the Deli. (*Id.* ¶ 25.) On December 6, 1997, Chapman entered the management training programing and began training to become an Area Manager. (*Id.* ¶ 26.) While a management trainee, Chapman made $9.44 per hour, the equivalent of $25,500 annually and the minimum starting rate for that position. (*Id.* ¶ 27.) In January of 1998, Walmart promoted Chapman to the salaried position of Area Manager in the Deli/Bakery Area at the minimum starting rate for that position, $27,500. (*Id.* ¶ 28.) In March of 2000 Chapman was promoted to assistant store manager. (*Id.* ¶ 33.) Chapman received the following performance evaluations and corresponding pay increases while at the Charles Town location:

| Year | Position | Rating | Pay Increase |
| --- | --- | --- | --- |
| 1999 | Area Manager | Meets Expectations | 6% |
| 2000 | Assistant Store Manager | Meet Expectations | 5% |
| 2001 | Assistant Store Manager | Meets Expectations | 5% |
| 2002 | Assistant Store Manager | Meets Expectations | 4% |
| 2003 | Assistant Store Manager | Valued Performer[2] | 4% |
| 2004 | Assistant Store Manager | Valued Performer | 5% |

---

[2] Walmart changed the nomenclature for evaluation ratings and asserts that "Meets Expectations and Valued performer were essentially equivalent ratings." (Riley Decl. ¶ 35 n.4.)

| 2005 | Assistant Store Manager | Valued Performer | 4% |

Chapman was transferred to the Martinsburg store in February of 2005, and resigned effective April 12, 2005. (*Id.* ¶¶ 36–37.)

**C.     Pay Discrimination Facts**

In her complaint, Chapman alleges that men earned more than similarly experienced and tenured women and that men earned raises more easily, and more frequently, than women. Chapman asserts in her complaint that men received either four or four and a half percent yearly raises, while women received three or three and a half percent yearly raises for similar positions. Chapman alleges that while she worked at the Charles Town location, Kent Tomchick and a produce manager named John (last name unknown) told Chapman they "regularly" received "four or four and a half percent yearly raises." Chapman claims that there was a "good ol' boys" club culture at Charles Town and that men were favored for raises. (*See* Chapman Decl. Chapman 42–43.)

Chapman also asserts that in the winter of 1997 at the Charles Town store, the Meat Manger told her that district food merchandiser Marvin Riggs said "he needed to get the women out of there because they didn't know what they were doing." Chapman alleges that in 2001 the food merchandiser at the Charles Town location told another employee, Norma Jean Rockwell, that "men have families to support" when Rockwell asked why she had a lower salary than a man hired for that position. (*See* Dep. of Stephanie Chapman 69:11–14, Sept. 3, 2020 [ECF No. 13-3].) In December of 2001, Chapman claims she was told by the store manager at the Charles Town location when she applied for the position of general merchandise manager that she was not eligible for the $2,000 a year raise.

Chapman alleges her annual performance increases—and those of two other female employees, Norma Jean Rockwell and Kim Hensen—were consistently lower than the performance increases of Canby, Linton, and another ASM named "Kent." The following is a comparison of Chapman's annual performance increases to those of Canby, Linton, Tomchick, Rockwell, and Petry as well as other male ASMs at the Charles Town location provided by the Defendant:

|               | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 |
|---------------|------|------|------|------|------|------|------|
| **Chapman**   | 6%   | 5%   | 5%   | 4%   | 5%   | 5%   | 4%   |
| **Canby**     | 6%   |      |      |      |      |      |      |
| **Linton**    | 7%   | 5%   |      |      |      |      |      |
| **Tomchick**  | 6%   | 5%   | 5%   |      |      |      |      |
| **Rockwell**  |      |      | 6%   | 4%   | 5%   | 5%   | 6%   |
| **Hesen (Petry)** |  | 5%   | 5%   | 4%   | 4%   | 4%   |      |
| **Kumar**     |      |      |      |      |      | 5%   | 5%   |
| **Young**     |      | 4%   |      |      |      |      |      |
| **Twigg**     |      | 4%   | 5%   | 4%   |      |      |      |
| **Hiteshue**  |      |      |      |      | 4%   |      |      |
| **Tracy**     |      |      |      |      |      | 4%   | 5%   |
| **Taylor**    |      |      | 5%   |      |      |      |      |
| **Felser**    |      | 5%   |      |      |      |      |      |
| **Banks**     |      |      | 5%   | 4%   |      |      |      |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Stansberry** | | 5% | 5% | 4% | 4% | | |
| **Wilson** | | | 5% | 4% | 4% | 4% | |
| **Studzinski** | | | | | | | 4% |
| **Ucak** | | | | | | 4% | |

(Riley Decl. ¶ 64.)

**D.    Pay Comparators**

Tony Canby and John Linton, Chapman's alleged comparators, were both Area Managers at the Charles Town location while Chapman was an Area Manager there. (*Id.* ¶ 39.) Canby worked as Meat Manager at Food Lion for approximately eight years prior to starting at Walmart, where he began as an hourly Meat Cutter in 1996. (*Id.* ¶ 40–41.) Later that year, he moved up to Assistant Meat Manager (an hourly position) and then to Area Manager for the Meat Division. (*Id.* ¶ 42.) Canby's salary was $30,000 as Area Manager, $2,500 more than the minimum starting rate. Walmart asserts that paying Canby more than the minimum starting rate was consistent with Walmart's discretion to offer more than the minimum starting rate to employees possessing relevant prior experience and skills. (*Id.* ¶ 43.)

Canby transferred to another store as a Meat Processor and then to the Charles Town store as Meat Lead (an hourly position) in October 1997. (*Id.* ¶ 44.) He became Area Manager in the Meat Division in May of 1998, at the salary he had previously received in that role—$30,000. (*Id.* ¶ 45.) Canby received a Meets Expectations annual performance review in 1999 and a corresponding 6% salary increase. (*Id.* ¶ 46.) In 2000, Canby received a merit increase rather than an annual performance increase. (*Id.* ¶¶ 47–49.) Canby's merit increase was a 6%

salary increase. (*See* Associate Commendation Form, Mar. 10, 2000 [ECF No. 4-10].) Canby transferred to store number 1674 following the merit increase. (Riley Decl. *Id.* ¶ 49.) Canby transferred back to the Charles Town location in January of 2002 as Meat Area Manager at the salary that had been set for him at location 1674. (*Id.* ¶ 50.) Canby was terminated in April of 2002. (*Id.* ¶ 51.)

John Linton was hired at the Charles Town location in May of 1998 as an Hourly Trainee in the Produce Division. (*Id.* ¶ 53.) Prior to working at Walmart, Linton had nine years of experience working in produce: he owned his own produce business for four years and worked as a Produce Manager for five years. (*Id.* ¶ 52.) On August 1, 1998, Linton was promoted to Produce Area Manager at the annual salary of $29,500. (*Id.* ¶ 54). Walmart asserts that Linton's salary was consistent "with Walmart's discretion to offer more than the minimum starting rate to associates having relevant prior experience and skills." (*Id.* ¶ 55.)

On his 1999 annual evaluation Linton received an Exceeds Expectations rating and a 7% pay increase. (*Id.* ¶ 56.) On his 2000 evaluation Linton received an Exceeds Expectations rating and a 5% pay increase. (*Id.* ¶ 57.) Linton resigned in December 2000. (*Id.* ¶ 58.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Shaw v. Stroud*, 13

F.3d 791, 798 (4th Cir. 1994). The court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

"As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 255 ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). Even when facts are not in dispute, the court cannot grant summary judgment unless

there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

### III.  ANALYSIS

#### A. Statute of Limitations

Walmart first argues that any claims based on Chapman's starting Area Manager salary are barred by the statute of limitations because she was promoted to Area Manager before the relevant limitations period. This is correct. Chapman was a member of the previously certified national class of female Walmart and Sam's Club employees challenging Walmart's retail store pay and management promotion policies as discriminatory against women in *Dukes v. Wal–Mart Stores, Inc.*, 564 U.S. 338 (2011). While the certification of the class was on appeal, the time period for filing an EEOC charge was tolled and, on remand, the District Court for the Northern District of California—the court in which the class action was originally certified—further tolled the period and set deadlines for members of the former class to file charges of discrimination with the *EEOC. See Dukes v. Wal-Mart Stores, Inc.,* No. 3:01-CV-02252-CRB, 2015 WL 3623481, at *1–3 (N.D. Cal. June 10, 2015); *Dukes v. Wal-Mart Stores, Inc.*, No. 3:01-cv-02252, Aug. 19, 2011 Order, ECF No. 760. The limitations period for claims brought by former *Dukes* class members began to run on December 26, 1998. Any events occurring before that date were more than 300 days before the operative EEOC charge in *Dukes*, and are therefore beyond the statute of limitations for this action, which flows from the relevant filings and dates in *Dukes. See Dukes v. Wal-Mart Stores, Inc.*, No. 3:01-CV-02252-CRB, 2015 WL 3623481, at *1–3 (N.D. Cal. June 10, 2015) (identifying the December 26, 1998 date).

Chapman argues that the statute of limitations did not begin to run until she learned of the pay differential between herself and her coworkers, but her argument misunderstands the nature of the limitation period at issue. The relevant concern in this case is the period covered by the operative EEOC charge, not the generic statute of limitations for civil rights claims. EEOC charges must be brought, at most, within 300 days of the complained-of conduct. *See* 42 U.S.C. § 2000e-5(e)(1). The limitations period for *Dukes* plaintiffs began to run on December 26, 1998, because that is 300 days prior to the operative EEOC charge in that case. Prior to the decertification of the class in *Dukes*, Chapman was "piggybacking" on that operative charge despite the fact that she had not filed a charge herself. Now that she has filed her own charge, she can still piggyback on the *Dukes* charge, but she cannot reach beyond it. Chapman filed her charge of discrimination on April 1, 2012. The only reason her claims can reach back 14 years to employment decisions that occurred in 1998 is because of the tolling from *Dukes*. If the court performed the limitations analysis as she wants it performed—uncoupled from *Dukes*—all of her claims would be time-barred in their entirety. Because the limitations period began after Chapman's hiring as Area Manager, any of her claims based on her starting salary are time-barred.

### B. Pay Discrimination

Chapman's remaining claim is a disparate-treatment claim for pay discrimination.[3] After considering the evidence, the court concludes that Chapman cannot state a *prima facie* claim and will therefore grant Walmart's motion for summary judgment.

---

[3] Before this matter was transferred to the undersigned, there were four additional plaintiffs. Chief Judge Michael F. Urbanski ruled on the motion to dismiss in this matter and dismissed Chapman's disparate-impact claim, among others. The court later severed the five plaintiffs' claims, leaving Chapman as the only plaintiff in this matter. *See* Order, *Medeiros v. Wal-Mart Stores, Inc.*, No. 5:19-cv-00037-MFU, Jan. 22, 2020 (ECF No. 33);

There are two ways to establish liability under Title VII for a disparate-treatment claim: (1) "demonstrating through direct or circumstantial evidence that [gender] was a motivating factor in the employer's adverse employment action"; or (2) relying on the burden[-]shifting scheme in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017). Chapman is proceeding under the burden-shifting scheme in *McDonnell Douglas*.

Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of sex discrimination. *McDonnell Douglas*, 411 U.S. at 802. For pay disparity, the plaintiff must show that "(1) she is a member of a protected class, (2) she performed her job satisfactorily, (3) an adverse employment action occurred, and (4) the circumstances suggest an unlawfully discriminatory motive." *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019). The plaintiff must establish her *prima facie* case by a preponderance of the evidence. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). If she succeeds, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual. *Id.*

When a plaintiff relies on a comparator to show a *prima facie* case of discrimination (as Chapman does), the comparator must be similarly situated "in all relevant respects." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). For this inquiry, courts consider: whether the employees had the same job description and were subject to the same standards; whether they

---

Order, *Medeiros v. Wal-Mart Stores, Inc.*, 5:19cv00037-MFU, Dec. 28 ,2020 (ECF No. 42).

had comparable experience, education, qualifications, and performance; and whether they had the same supervisors. *See Spencer*, 919 F.3d at 207; *see also David v. Winchester Med. Ctr.*, No. 5:16-cv-00063, 2018 WL 310140, at *12 (W.D. Va. Jan. 5, 2018) ("Because [the plaintiff] and [the comparator, Dr. Restrepo] did not report to the same individual, as a matter of law, Dr. Restrepo cannot serve as a comparator."). If the two employees are similar in all relevant respects but have different pay, then an inference arises that the pay differential stems from discriminatory treatment. *See Swaso*, 698 F. App'x at 748. "[T]he plaintiff must provide evidence that the proposed comparators are not just similar in some respects, but "similarly-situated in all respects." *See Spencer*, 919 F.3d at 207 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Chapman bases her disparate-treatment claim on the pay discrepancy between herself and her Area Manager colleagues Tony Canby and John Linton, both of whom were paid more than the minimum starting salary when they became Area Managers while Chapman was only paid the minimum.

Chapman cannot prove that her salary as an Area Manager was discriminatory. As a threshold matter, neither Canby nor Linton held the same position as Chapman. A general overlap in the aspects of Area Mangers' positions is not sufficient to make Area Managers of different departments similarly situated. *Forbes v. Wal-Mart Stores, Inc.*, No. 17-81225-CIV, 2019 WL 3859010, at *6 (S.D. Fla. Aug. 16, 2019) (cleaned up) (holding a former *Dukes* class member who worked as a Photo Lab Manager was not similarly situated to a male Meat Processing Manager "in any appreciable way" because she offered no evidence that, among other things, the challenges of the jobs were comparable, that they required the same skills,

-12-

had similar workloads, or managed the same number of employees); *Ladik v. Wal-Mart Stores, Inc.*, No. 13-cv-123-bbc, 2014 WL 4187446, at *3 (W.D. Wisc. Aug. 22, 2014) (comparators were not similarly situated "because they held similar positions, without considering other factors"); *Spencer* 919 F.3d at 204 ("[W]e have rejected an analogous claim that jobs with the same title and only vaguely corresponding responsibilities can be considered equal[.]"). Canby was Meat Division Area Manager, Linton was the Produce Area Manager, and Chapman was the Bakery/Deli Area Manager. Chapman provides only a bare assertion that the positions of Area Manager of different Divisions have similar duties and responsibilities and offers nothing to support the proposition. The plaintiff bears the burden to "provide evidence that the proposed comparators are not just similar in some respects, but 'similarly-situated in all respects,'" and Chapman has failed to point to any evidence in her favor. *See Spencer*, 919 F.3d at 207 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Generalized similarity is not enough to survive a motion for summary judgment because jobs with similar titles and "only vaguely corresponding responsibilities" are not similarly situated. *Id.* (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Chapman asserts that that positions were "comparable enough" that a reasonable juror could find them as similarly situated, but provides no argument or evidence to support this conclusion. Indeed, Chapman acknowledges that her duties may have varied from Linton and Canby's in her response in opposition to Walmart's motion for summary judgment. (ECF No. 13 at 14.)

In addition to the differences in their positions, Canby and Linton had specialized skills and relevant prior work experience that distinguish them from Chapman. Canby allegedly

-13-

possessed butchering skills that were valued while he oversaw the Meat Department. (*See* Dep. of Clinton Miller 32:3–10, Jan. 4, 2021 [ECF No. 4-2].) Likewise, Linton owned his own produce business for four years and was a produce manager for other employers for five years prior to working at Walmart. (Riley Decl. ¶ 52). Comparators must be "similarly-situated *in all respects*," and Chapman's broad generalizations cannot show sufficient similarity to meet her burden under Title VII. *See Spencer*, 919 F.3d at 207. These significant differences are sufficient for the court to conclude that Linton and Canby are not proper pay comparators.

Chapman's allegations of discrimination regarding her annual performance evaluations also fail. Chapman alleges that she and her female coworkers received raises of 3–3.5% while her male coworkers received 4–4.5% raises. Walmart's records, however, which Chapman does not dispute, demonstrate that Chapman received comparable percentage increases to her peers. On only one occasion, Linton received a larger performance increase than Chapman did, a 7% increase in comparison to Chapman's 6% increase. (Riley Decl. ¶¶ 31, 56.) Walmart asserts that Linton's raise that year was a merit increase. (Riley Decl. ¶¶ 30, 56.) A difference in performance evaluations is a legitimate basis for a difference in pay increase. *Bragg v. Wal-Mart Stores, Inc.*, No. 2:19-CV-00231, 2020 WL 3421864, at *11 (S.D.W. Va. June 22, 2020) (finding that a "merit increase" was sufficient to justify differing pay rates). Every other male Assistant Store Manager at the Charles Town store during the relevant time period received equal or lower percentage pay increases than Chapman did. (Riley Decl. ¶ 64.)

In sum, regarding the purported instances of pay discrimination, Chapman has failed to present a *prima facie* case. Accordingly, the court will grant the Defendant's motion for summary judgment.

### IV. CONCLUSION

For the above reasons, Walmart's motion for summary judgment [ECF No. 3] will be granted. A separate order will be issued.

**ENTERED** this 10th day of June, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE